THE GULF POND OYSTER COMPANY *vs.* SIMEON J. BALDWIN.

The statute (Rev. Statutes, p. 215, sec. 10,) provides that when the owner of any land in which there may be any salt water creek or inlet shall desire to dam the same for an oyster pond, he may apply to the selectmen of the town, who may take certain action, which, on being reported to and approved by the town, shall give the applicant the right to construct and maintain such dam. Held—

1. That the mode of procedure was *stricti juris,* and not to be departed from or defective in any particular.

2. That where an application to the selectmen was made by only a part of the proprietors of land upon an inlet, all of their titles extending only to high water mark, it was questionable whether the applicants were "owners of land in which there was a creek or inlet," within the meaning of the statute.

3. That if the place authorized to be enclosed by a dam was a natural oyster bed, the public would have a right to the common use of it for taking oysters.

4. That the fact that oysters grew naturally at the mouth of a stream running into the inlet and upon the harder portions of its bed, and had existed there beyond memory in great abundance and been openly and constantly taken by the public, was very high, if not conclusive, evidence that the place was a natural oyster bed.

TRESPASS qu. cl. fr., brought, by appeal from a justice of the peace, to the Court of Common Pleas of New Haven County, and tried to the court, on the general issue, with notice, before *Robinson, J.* The court rendered judgment *pro formâ* for the plaintiffs and the defendant moved for a new trial. The case is fully stated in the opinion.

*Watrous* and *W. B. Stoddard,* in support of the motion.

No argument was made or brief filed on the part of the plaintiffs.

PHELPS, J. The plaintiff is a joint stock corporation organized in May, 1867, for the purpose of planting and propagating oysters in a certain salt water creek or inlet in the town of Milford, and it brought this action of trespass against the defendant for entering upon and removing oysters from the same.

Several distinct questions, and independent grounds of reversal of the judgment of the court below, are set up in

the record, but as the case seems virtually abandoned by the plaintiff, no argument or brief having been submitted in its behalf, we feel at liberty to dispose of it without going at length into a discussion of all the points presented.

The claim of the plaintiff to the exclusive right of taking oysters in the bed of the water described in the declaration, and of maintaining trespass against all other persons who should enter upon the *locus in quo* for the purpose of also taking and removing them, must depend for its validity upon whether the *locus* is a natural oyster bed, so that the public have a right to the common enjoyment of the privilege, and if not such, whether the plaintiff has taken proper measures under the statute to obtain the right to dam the creek and use it as a private oyster pond.

By section 72, of chapter 2, of title 23, of the Revised Statutes of 1866, the method to be pursued is clearly prescribed in the following language:

" Whenever the owner of any land in this state in which there may be any salt water creek or inlet, shall desire to dam, gate or lock the said creek or inlet for an oyster pond for the growing of oysters, he may make application therefor to the selectmen of the town where such creek or inlet may be; and the selectmen, such application being made, shall visit and examine the creek or inlet, and if in their opinion the damming of such creek or inlet will not injure navigation, or deprive the public of any rights or privileges they enjoy, they shall mark off or set bounds where a dam may be built, and report their opinion to any annual or special town meeting of the town wherein such creek or inlet is situated; and if the town meeting shall approve of the opinion of the selectmen, then the owner of said creek or inlet may construct a dam, gate or lock across said creek or inlet as an oyster pond for the growing of oysters."

The mode of procedure is *stricti juris*, and must not be departed from or defective in any essential requisite.

The record states that Gulf Pond is a sheet of water about a mile long and in greatest width about one-third of a mile, into the north end of which a small stream known as Indian

River flows, and the south end is open to Long Island Sound; that the tide ordinarily and naturally ebbs and flows in it, that the bottom of the pond is mostly of soft black mud, the other parts being of hard material, and that oysters naturally breed at the mouth of Indian River, and on the harder parts of the bottom. Under authority from the town in the year 1716, certain persons erected a dam with tide gates across the south end of the pond and used the water during ebb tide for mill purposes. Ever since the dam was built, boats and scows have at high water entered the pond from the sound as occasion required. Oysters and other shell fish have existed in great abundance in the pond since the dam was built, and the public have openly and constantly exercised the privilege of taking oysters at their pleasure until the incorporation of the plaintiff, and to some extent ever since.

It appears that an application by a part only of the land owners adjoining the pond was made to the selectmen of the town of Milford, but only one of them examined the premises and signed the report, which was made to an annual meeting of the town held by adjournment on the 11th day of December, 1866, the warning of which meeting contained no reference to this subject. The meeting accepted the report of the selectmen and passed a vote granting the application. On the 22d day of the same month a special town meeting duly warned for the purpose was held to consider the expediency of rescinding the vote passed at the former meeting, and it was rescinded.

The water in question seems clearly to be one of those inlets and arms of the sea which are common to the shore of Long Island Sound, and while perhaps not strictly navigable in a commercial sense, is yet of such a character that the title of the adjoining proprietors of the land extends only to the line of common high water; and as only a portion of the proprietors joined in making the application, while another portion were opposed, it appears at least questionable whether in contemplation of the statute the applicants were " owners of land in which there was any salt water creek or inlet ";

but if they were, whatever authority they may have derived from the town was immediately afterwards revoked.

The fact that oysters grow naturally at the mouth of Indian River and upon the harder portions of the bed of the pond, and that they have immemorially existed in great abundance and been openly and constantly taken by the public until the incorporation of the plaintiff in 1867, furnishes very high if not conclusive evidence of the existence of a natural oyster bed, and of a public and common right to the enjoyment of it as such.

Passing other, and some of them quite material questions, we are satisfied that the points we have considered are decisive of the case, and that a new trial should be granted.

In this opinion the other judges concurred.